1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY HELEN BERNSTEIN, et al.,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT OF
HOUSING & URBAN DEVELOPMENT,
et al.,

        Defendants.

Case No.  20-cv-02983-JSC

**SCREENING ORDER NO. 2**

Re: Dkt. No. 77

      Plaintiffs Mary Helen Bernstein and Elizabeth Grace Tigano, who are proceeding without an attorney, filed this discrimination action against the United States Department of Housing and Urban Development, the California Department of Fair Employment and Housing, and several individual defendants employed by these agencies.  The Court previously granted Plaintiffs' in forma pauperis application, reviewed their complaint under 28 U.S.C. § 1915, and concluded that Plaintiffs' complaint failed to state a claim.  (Dkt. No. 74.)  Plaintiffs thereafter filed the now operative Second Amended Complaint which repleads several of Plaintiffs' claims, adds allegations and claims against several Defendants including the State of California, the Alameda County Superior Court,  the Judicial Council of California, and eight Alameda County Superior Court judges and judicial commissioners.  (Dkt. No. 77.)  For the reasons stated below, the Court concludes that Plaintiffs' SAC is deficient and fails to state a claim.

**SECOND AMENDED COMPLAINT ALLEGATIONS**

      Plaintiffs Mary Bernstein and Elizabeth Tigano are sisters.  In their 79-page Second Amended Complaint (SAC), they identify themselves as suffering from numerous disabilities and as survivors of sexual abuse.  (Dkt. No. 77 at ¶¶ 1-2.)   The SAC describes a lengthy history of issues with the tenants and management of the apartment complex in which Ms. Bernstein lives,

Plaintiffs' efforts to seek redress regarding these issues from the United States Department of Housing and Urban Development (HUD), the California Department of Fair Employment and Housing (DFEH), and the Alameda County Superior Court. Ms. Tigano, who lives in Arizona, alleges that she has been impacted by Ms. Bernstein's harassment in California and that she has been harassed in her HUD-affiliated housing project in Arizona. (*Id.* at ¶ 30.)

Plaintiffs' SAC repleads many of their allegations regarding HUD and DFEH's failure to take action to protect them from harassment in their respective housing situations. Plaintiffs have filed 9 civil harassment restraining orders as well as complaints with HUD regarding their hostile living environment issues. (*Id.* at ¶¶ 29-33.) At some point, it appears that HUD transferred its investigation to the California Department of Fair Employment and Housing. (*Id.* at ¶ 32.) While Plaintiffs continue to take issue with HUD and DFEH's handling of their complaints, their SAC focuses on the alleged improper actions of the Alameda County Superior Court judges and judicial commissioners handling Plaintiffs' lawsuits regarding Ms. Bernstein's living situation and the harassment she has endured. (*Compare* Dkt. No. 37 *with* Dkt. No. 77.) In particular, Plaintiffs allege that "Defendant Alameda County Superior Court has repeatedly denied and ignored reasonable accommodation requests of Plaintiff Bernstein and witness Elizabeth Tigano," and denied their request for appointment of counsel. (Dkt. No. 77 at ¶ 33.) Plaintiffs allege that "Defendant Paul Herbert Judge has subjected disabled half sisters Plaintiffs Bernstein and Tigano to humiliation, mental anguish on remote hearings November 4, 2020, November 9, 2020 and February 24, 2021" and that "PAUL HERBERT, TARA DESAUTELS, BENTRISH SATARZADEH, JEFFREY BRAND, PATRICK MCKINNEY, PELAYO LLAMAS, TAMIZA HOCKENHULL have denied repeatedly reasonable accommodations submitted with volumes of doctors reports requesting reasonable accommodations for Plaintiff Mary Bernstein." (*Id.*)

The SAC includes seven claims for relief: (1) race discrimination in violation of 42 U.S.C. § 1981 as to the HUD/DFEH Defendants; (2) religious discrimination in violation of 42 U.S.C. § 1981 as to all Defendants; (3) negligent infliction of emotional distress in violation of Cal. Civ. Code § 3294 as to all Defendants; (4) intentional infliction of emotional distress in violation of Cal. Civ. Code § 3294 as to all Defendants; (5) "NEGLIGENCE INTENTIONAL INFLICTION

1    OF EMOTIONAL DISTRESS RELIGIOUS/RACIAL DISCRIMINATION BY HUD, CAL

2    DFEH/CIVIL RIGHTS VIOLATION UNRUH CIVIL RIGHTS ACT Code Section Civ. §§51, et

3    seq. (Public Accommodations) Gov. §12940 et seq. (Housing & employment)

4    Agency Civ §§51: None; Gov. §12940: Dept. of Fair Employment and Housing" (Dkt. No. 77 at

5    p. 42); (6) disability discrimination in violation of 42 U.S.C. § 12132 as to the State of California

6    Judicial Branch; and (7) disability discrimination in violation of 42 U.S.C. § 12132 as to

7    HUD/DFEH Defendants.

8         As relief, Plaintiffs seek an order finding that (1) by denying them counsel in the state

9    court proceedings, "the Judicial Branch of the California Government and its subdivisions violated

10   the due process rights of Plaintiffs and other indigent litigants with cognitive disabilities"; (2)

11   Plaintiffs' due process rights were violated during "the court processes in Superior Court of

12   Alameda County" and reversing all rulings made in those proceedings; (3) "Judge Paul Herbert of

13   Alameda County Superior Court during the hearings on November 4, 2020 November 9 2020 and

14   February 24 2021 [committed] intentional abuse, torture, and discrimination of cognitively

15   disabled plaintiff Mary Bernstein and subjected cognitively disabled Plaintiff Elizabeth Tigano to

16   traumatic experience;" and (4) Plaintiffs are entitled to damages from all Defendants.  (Dkt. No.

17   77 at pp. 75-77.)

18                                        **LEGAL STANDARD**

19        The Court has a continuing duty to dismiss any case in which a party is proceeding in

20   forma pauperis upon a determination that the case is: (1) frivolous or malicious; (2) fails to state a

21   claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is

22   immune from such relief. *See* 28 U.S.C. § 1915(e)(2). The standard of review under 28 U.S.C. §

23   1915(e)(2) mirrors that of Rule 12(b)(6). *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000).

24   Thus, the complaint must allege "enough facts to state a claim to relief that is plausible on its

25   face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a

26   "probability requirement" but mandates "more than a sheer possibility that a defendant has acted

27   unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations

28   omitted). To avoid dismissal, a complaint must contain more than "naked assertion[s]," "labels

1    and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550

2    U.S. at 555-57. "A claim has facial plausibility when the plaintiff pleads factual content that

3    allows the court to draw the reasonable inference that the defendant is liable for the misconduct

4    alleged." *Iqbal*, 556 U.S. at 678.

5    When a plaintiff files a complaint without being represented by a lawyer, the court must

6    "construe the pleadings liberally ... to afford the petitioner the benefit of any doubt." *Hebbe v.*

7    *Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (internal quotation marks and citation omitted). Upon

8    dismissal, self-represented plaintiffs proceeding in forma pauperis must be given leave "to amend

9    their complaint unless it is absolutely clear that the deficiencies of the complaint could not be

10   cured by amendment." *Franklin v. Murphy*, 745 F.2d 1221, 1228 n.9 (9th Cir. 1984) (internal

11   quotation marks and citation omitted).

12                                          **DISCUSSION**

13   There are several issues with Plaintiffs' SAC.  While the Court is sympathetic to Plaintiffs'

14   challenging personal situations and the complexities of navigating the legal system without

15   counsel, Plaintiffs' SAC does not comply with Rule 8 and provide a short and plain statement of

16   the factual basis for their claims. *See Nevijel v. N. Coast Life Ins. Co*., 651 F.2d 671, 674 (9th Cir.

17   1981) (dismissing a 48-page complaint with 23-pages of addenda under Rule 8 as "verbose,

18   confusing and almost entirely conclusory.").  While Plaintiffs have reduced the number of claims

19   for relief—from 36 to 7—their allegations are repetitive, confusing, and not tethered to their actual

20   legal claims.  *See McHenry v. Renne*, 84 F.3d 1172, 1175 (9th Cir. 1996) (affirming dismissal of

21   complaint which contained "argumentative and prolix allegations" and failed to identify "what

22   constitutional torts [defendants] were accused [of]").

23   In addition, Plaintiffs have failed to plead a claim for relief under any of the seven claims

24   pled here.  ***First***, with respect to Plaintiffs' claims for race and religious discrimination under 42

25   U.S.C. § 1981, as the Court previously noted, Section 1981 does not protect against religious

26   discrimination. *See Noyes v. Kelly Servs*., 488 F.3d 1163, 1167 n.3 (9th Cir. 2007) ("It is well

27   established, however, that § 1981 does not apply to claims of religious discrimination.")  To state

28   a claim for race discrimination under § 1981, a plaintiff must allege facts demonstrating (1) that

United States District Court
Northern District of California

4

1    she is a member of a racial minority; (2) the defendant's intent to discriminate on the basis of race;

2    and (3) that the discrimination concerned one or more of the activities enumerated in the statute.

3    *See Lenk v. Sacks, Ricketts, and Case LLP*, No. 19-cv-03791-BLF, 2020 WL 2793480, at *4 (N.D.

4    Cal. May 29, 2020); *see also Comcast Corp. v. National Assn. of Africa American-Owned Media*,

5    140 S.Ct. 1009, 1019 (2020) ("a plaintiff must initially plead and ultimately prove that, but for

6    race, it would not have suffered the loss of a legally protected right.").  Plaintiffs, who allege that

7    they are white women, have not pled a colorable claim under Section 1981. (Dkt. No. 77 at ¶ 42.)

8         ***Second***, to state a negligent infliction of emotional distress claim Plaintiffs must plausibly

9    allege "(1) serious emotional distress, (2) actually and proximately caused by (3) wrongful

10   conduct (4) by a defendant who should have foreseen that the conduct would cause such distress."

11   *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004).   With respect to this claim, Plaintiffs

12   allege that "Defendant USA" was negligent in supervising its agents and employees and that its

13   "conduct of closing files, denying relief, denying that Plaintiffs were federally protected class

14   extreme and outrageous and done with the intent to cause severe emotional distress."  (Dkt. No. 77

15   at ¶¶ 55-56.)  However, Plaintiffs have not named the United States of America as a Defendant

16   here.  To the extent that these allegations are directed at HUD they are too conclusory to state a

17   claim.  *Coleman v. Beard*, No. 14-CV-05508-YGR (PR), 2015 WL 395662, at *4 (N.D. Cal. Jan.

18   29, 2015) ("While the federal rules require brevity in pleading, a complaint nevertheless must be

19   sufficient to give the defendants 'fair notice' of the claim and the 'grounds upon which it rests.'")

20   (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  The same is true with respect to Plaintiffs'

21   general allegation that the State of California was negligent in its supervision of employees and

22   denied Plaintiffs their Fourteenth Amendment due process rights.  (Dkt. No. 77 at ¶ 58.)  Finally,

23   to the extent that Plaintiffs name particular individual employees of HUD or DFEH, Plaintiffs

24   have not alleged serious emotional distress,  actually and proximately caused by wrongful conduct

25   of any f these individuals, such that they should have foreseen that the conduct would cause such

26   distress.  (*Id*. at ¶¶ 59-69.)

27        ***Third***, to the extent that Plaintiffs predicate their claim for intentional infliction of

28   emotional distress on the same basis as their negligent infliction of emotional distress claim, it too

United States District Court
Northern District of California

5

appears to fail to state a claim. The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Corales v. Bennett*, 567 F.3d 554, 571 (9th Cir. 2009) (internal citation omitted). Conduct is outrageous if it is so extreme as to exceed all bounds of that usually tolerated in a civilized community. *Id.* at 571. "Liability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hughes v. Pair*, 46 Cal. 4th 1035, 1051 (2009) (internal citation and quotation marks omitted) (concluding that threats that, unless plaintiff granted the defendant sexual favors, he would use his authority as a trustee of the trust set up for plaintiff's son to deny her requests for funds, "fall far short of conduct that is so outrageous" that it exceed[s] all bounds of that usually tolerated in a civilized community.") (internal citation and quotation marks omitted). Plaintiffs have not identified actions which give rise to their intentional infliction of emotional distress claim beyond alleging that HUD and DFEH create a quid pro quo and hostile environment.  (Dkt. No. 77 at ¶ 78.)

*Fourth*, Plaintiffs' fifth claim for relief repeats the same allegations, although its legal basis is unclear.  The claim is captioned: FIFTH CLAIM FOR RELIEF NEGLIGENCE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS RELIGIOUS/RACIAL DISCRIMINATION BY HUD, CAL DFEH/CIVIL RIGHTS VIOLATION UNRUH CIVIL RIGHTS ACT Code Section Civ. §§51, et seq. (Public Accommodations) Gov. §12940 et seq. (Housing & employment) Agency Civ §§51: None; Gov. §12940: Dept. of Fair Employment and Housing."  (Dkt. No. 77 at p. 42.)  Because the Court cannot discern the legal claim at issue with this claim—to the extent that it is distinct from the other claims alleged—Plaintiffs' fifth claim for relief likewise fails to state a claim.

*Fifth*, Plaintiffs' ADA claim is pled against the "Defendant State of California Judicial Branch," but focuses their allegations against the individual Alameda County Superior Court judges and commissioners as well as the Judicial Council of California.  (Dkt. No. 77 at ¶ 87.)  To

the extent that Plaintiffs challenge actions or rulings taken in their state court action, such a claim may be barred by the *Rooker-Feldman* doctrine.  "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Thus, "[i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court." *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). Under the *Rooker-Feldman* doctrine, "[a] federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal [and,] [a]s part of that refusal, it must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court." *Noel*, 341 F.3d at 1158. "A claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) (internal quotation marks and citations omitted). "Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented to both courts are inextricably intertwined." *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).  Plaintiffs ask the Court here to find that the Alameda County Superior Court erred and asks that this Court reverse its rulings which would be barred by *Rooker-Feldman*.

To the extent that Plaintiffs make a reasonable accommodation ADA claim against Judge Herbert, Judge Desautels, Judge Seligman, Commissioner Hockenhull, Judge Brand, Judge Mckinney, Commissioner Satarzadeh, and Commissioner Llama, even if these claims are not barred by *Rooker-Feldman*, these Defendants are entitled to judicial immunity for acts done in their official capacity.[1]  The doctrine of judicial immunity provides a "complete immunity from

---

[1] Title II claims cannot be maintained against state officers in their individual capacities. *See Polley v. Davis*, No. 17-CV-03793-JST, 2018 WL 4352958, at *3 (N.D. Cal. Sept. 11, 2018)

United States District Court
Northern District of California

1    suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per

2    curiam); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc) ("Judges and those

3    performing judge-like functions are absolutely immune from damage liability for acts performed

4    in their official capacities."). Judicial immunity does not apply to (1) "actions not taken in the

5    judge's judicial capacity" or (2) "actions, though judicial in nature, taken in the complete absence

6    of all jurisdiction." *Mireles*, 502 U.S. at 11-12. Whether a judge acts in a judicial capacity turns on

7    "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the

8    expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id*. at 12

9    (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

10            Plaintiffs' allegations here are that Judge Herbert denied Ms. Bernstein's request for live

11   hearings (rather than telephonic), denied her request for continuances, and denied her request for

12   appointment of counsel. (Dkt. No. 77 at ¶ 87(a)-(c). The Ninth Circuit has identified four factors

13   that indicate an act is performed in the judicial capacity: "(1) the precise act is a normal judicial

14   function; (2) the events occurred in the judge's chambers; (3) the controversy centered around a

15   case then pending before the judge; and (4) the events at issue arose directly and immediately out

16   of a confrontation with the judge in his or her official capacity." *Meek v. County of Riverside*, 183

17   F.3d 962, 967 (9th Cir. 1999) (citation omitted). "These factors are to be construed generously in

18   favor of the judge and in light of the policies underlying judicial immunity." *Ashelman v. Pope*,

19   793 F.2d 1072, 1076 (9th Cir. 1986) (en banc). Judge Herbert's denial of Plaintiffs' request for

20   live hearings, for continuances, and for appointment of counsel were part of the exercise of his

21   normal judicial functions for which he is entitled to judicial immunity. *See Duvall v. Cty. of*

22   *Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001)

23   ("Ruling on a motion is a normal judicial function, as is exercising control over the courtroom

24   while court is in session.") Plaintiffs' allegations against the remaining judges and judicial

25   commissioners likewise appear to be based on actions that these Defendants took while

26   performing normal judicial functions including declining to schedule hearings in the morning as a

27   _____

28   (citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Alsbrook v. City of Maumelle*, 184
     F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) ); 42 U.S.C. § 12132.

1    reasonable accommodation, limiting the amount of oral argument time Plaintiffs were given, and

2    requiring responses to multiple motions/discovery requests at the same time.  (Dkt. No. 77 at ¶

3    87(d)-(i).)

4         *Finally*, Plaintiffs' ADA claim against HUD and DFEH fails to state a claim under Title II

5    of the ADA.  To plead a Title II claim, a plaintiff must allege : (1) she is a "qualified individual

6    with a disability"; (2) she was either excluded from participation in or denied the benefits of a

7    public entity's services, programs, or activities, or was otherwise discriminated against by the

8    public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her

9    disability. *Weinreich v. Los Angeles County Metropolitan Transp. Auth*., 114 F.3d 976, 978 (9th

10   Cir.1997).   While Plaintiffs allege that HUD and DFEH officials ignored their complaints and did

11   not assist them in stopping the harassment at their housing complexes, Plaintiffs do not tie these

12   allegations to their disabilities; that is, they do not allege that these actions were taken by HUD or

13   DFEH employees *because of* their disabilities.

                                    **CONCLUSION**

15        For the reasons set forth above, Plaintiffs' SAC fails section 1915 review.  Plaintiffs may

16   file a further amended complaint **within 60 days**.  Any amended complaint must clearly and

17   succinctly (1) summarize Plaintiffs' factual allegations; (2) identify the legal basis for their claims;

18   and (3) identify which Defendants are named for which claims.  If Plaintiffs do not respond to this

19   Order or if their amended complaint fails to state a claim, the Court may prepare a report and

20   recommendation recommending that a district judge dismiss the complaint.

21        **The Court continues to encourage Plaintiffs to seek free assistance from the Northern**

22   **District's Legal Help Center.  Due to ongoing COVID concerns, Plaintiffs can make a**

23   **telephone appointment by calling (415) 792-8982.**

24        **IT IS SO ORDERED.**

25   Dated: April 19, 2021

26

27   _____
     JACQUELINE SCOTT CORLEY
28   United States Magistrate Judge